**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ERIC JOSEY,

     Plaintiff,

v.                                 Case No. 3:25-cv-1472-BJD-SJH

FLAGLER COUNTY BOARD OF
COUNTY COMMISSIONERS et
al.,

     Defendants.

_____/

## O R D E R

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss

(Doc. 12) and pro se Plaintiff's Response in Opposition (Doc. 19).

Plaintiff initiated this "Civil Rights" action against several state

governing bodies for their alleged role in converting a "historically Black

public community center to a private nonprofit organization linked to a law

enforcement agency." (Doc. 1 at 1; Complaint). The conversion is the basis for

Plaintiff's claims in this case pursuant to 42 U.S.C. § 1983.

Plaintiff sues as a resident and taxpayer of Flagler County (the

"County"), Florida. Complaint at 4. He claims Defendants deprived him of

access to the George Washing Community Carver Center (the "Carver

Center"). In 2011, the County faced budgetary constraints that were going to

affect the Carver Center's operation. Id. at 7. In response, Defendants, among others, entered in a 2011 interlocal agreement to keep the Carver Center open. Id. The Sheriff's Office for Flagler Country (the "Sherriff or SO") sat on the governing board for the Carver Center and made a yearly contribution to keep it operational. Id.

In 2023, Defendants entered into a new interlocal agreement (the "ILA") that expanded programming at the Carver Center to include programs hosted by the Police Athletic League (the "PAL"). Id. at 8. The PAL is a private non-profit youth athletics organization associated with the Sheriff's Office, but operated by the National Police Athletic League. Id. Plaintiff claims the ILA was conceived among the Defendants and others in meetings that were not open to the general public. Id. at 9. The ILA was publicly noticed and adopted by Defendants despite opposition from some members of the community. Id. at 10. As a result, the Carver Center now hosts more structured PAL programs at the expense of free time or cultural events. Id. at 11. PAL programs are open to all community children, however, regardless of ability to pay. Id.

Plaintiff argues the ILA violates Florida's laws, an argument Plaintiff acknowledges was rejected by Florida state court. Id. at 15. Plaintiff now claims Defendants' actions violate section 1983 and were done with discriminatory intent. Id. at 16.

- 2 -

Preliminarily, the Court notes the Complaint is a prototypical "shotgun pleading." There are four basic types of shotgun pleadings:

> (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which.

Yeyille v. Miami Dade Cty. Pub. Sch., 643 F. App'x 882, 884 (11th Cir. 2016) (quoting Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 (11th Cir. 2015)).  "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." Weiland, 792 F.3d at 1323. Consequently, in ruling on the sufficiency of a claim, the Court is faced with the onerous task of sifting out irrelevancies in order to decide for itself which facts are relevant to a particular cause of action asserted. See id.  Here, Plaintiff lumps all Defendants together and treats them as a single entity.

In the Eleventh Circuit, shotgun pleadings of this sort are "altogether unacceptable." Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997; Cook v. Randolph County, 573 F.3d 1143, 1151 (11th Cir. 2009) ("We have had much to say about shotgun pleadings, none of which is favorable.") (collecting

cases). As the Court in <u>Cramer</u> recognized, "[s]hotgun pleadings, whether filed by plaintiff or defendant, exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwarranted expense on the litigants, the court and the court's parajudicial personnel and resources." <u>Cramer</u>, 117 F.3d at 1263. When faced with the burden of deciphering a shotgun pleading, it is the trial court's obligation to strike the pleading on its own initiative and force the plaintiff to replead to the extent possible under Rule 11, Federal Rules of Civil Procedure. <u>See</u> <u>id.</u> (admonishing district court for not striking shotgun complaint on its own initiative); <u>see</u> <u>also</u> <u>United States ex rel. Atkins v. McInteer</u>, 470 F.3d 1350, 1354 n.6 (11th Cir. 2006) ("When faced with a shotgun pleading, the trial court, whether or not requested to do so by a party's adversary, ought to require the party to file a repleader.") (citing <u>Byrne v. Nezhat</u>, 261 F.3d 1075, 1133 (11th Cir. 2001), <u>abrogated on other grounds as recognized by</u> <u>Douglas Asphalt Co. v. QORE, Inc.</u>, 657 F.3d 1146, 1151 (11th Cir. 2011)).

More problematically, Plaintiff does not have standing to bring this suit. "Standing 'is the threshold question in every federal case, determining the power of the court to entertain the suit.'"[1] <u>CAMP Legal Def. Fund, Inc. v.</u>

---

[1] This also no substantive basis for the Court to consider Plaintiff's claims outside of section 1983 as there are no recognizable section 1983 violations plead. <u>See</u> <u>McKinney v. Pate</u>, 20 F.3d 1550, 1556 (11th Cir. 1994). This leaves only claims pursuant to Florida law without a tether to federal jurisdiction. The Court declines any invitation to revisit the Florida court's ruling on the matter as there is no showing the decision violated federal law

City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). "To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (2013) (internal quotations omitted). "[T]he party invoking federal jurisdiction bears the burden of establishing these elements." Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A., 781 F.3d 1245, 1251 (11th Cir. 2015) (internal quotations and citation omitted); see also Harrell v. The Florida Bar, 608 F.3d 1241, 1253 (11th Cir. 2010) (requiring the plaintiff to demonstrate standing by showing a sufficient injury in his facial challenge to nine provisions of the Florida Bar's advertising rules).

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." Lujan v. Defs. of Wildlife, 504 U.S. 555, 573–74 (1992). While a taxpayer may

---

or denied Plaintiff due process. See id. at 1557 ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise."). Moreover, the Court declines to exercise supplemental jurisdiction.

have standing where there is an illegal practice with a direct and immediate injury to him or herself, no such injury is alleged here. See Pelphrey v. Cobb Cnty., Ga., 547 F.3d 1263, 1280 (11th Cir. 2008).

Plaintiff alleges general community disillusionment over use of the Carver Center to host the PAL. While claiming the move was motivated by racial animus or has a disproportionate impact on the Black community, Plaintiff fails to offer how that is the case. There are no facts from which the Court could find racial animus or the type of discrimination necessary for the federal courts to intervene. See Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc., 682 F.3d 1293, 1297 (11th Cir. 2012) (holding that there must be facts that "the decisionmaker selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group") (alterations and internal quotations omitted).

Plaintiff's Complaint amounts to a dissatisfaction with the outcome of, in his words, a publicly noticed and adopted plan for use of the Carver Center. The Court commends Plaintiff for his candor in the Complaint and effort in recounting the procedural history. The Court also understands the described importance the Carver Center plays in the community. The

outcome Plaintiff seeks, however, must be achieved at the ballot box, not the courthouse.[2]

Accordingly, after due consideration, it is

**ORDERED:**

1. Defendants' Motion to Dismiss (Doc. 12) is **GRANTED**.

2. This case is **DISMISSED without prejudice**.

3. The Clerk of the Court shall close this file and terminate any pending motions.

**DONE** and **ORDERED** in Jacksonville, Florida this __*25th*__ day of June, 2026.

_____
BRIAN J. DAVIS
United States District Judge

2
Copies furnished to:

Counsel of Record

---

[2] Taking Plaintiff's proposed course of action at its face, would allow every single tax paying citizen to challenge each and every law, regulation, and policy with which they disagreed in the federal court system. The effect would not only cripple the judiciary, but diminish the role of the legislature.